# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**DAVID JAMES**                                                                                                          **PLAINTIFF**

**V.**                                                                                                                          **2:07CV092**

**LAURENCE MELLEN, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
DISTRICT ATTORNEY, CIRCUIT COURT
DISTRICT 11, AND THE STATE OF
MISSISSIPPI, HALEY BARBOUR, GOVERNOR**                          **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the defendants' motion [19] to dismiss, or in the alternative, the defendants' motion for summary judgment. The plaintiff has responded in opposition and this court is prepared to rule.

The plaintiff filed this action on May 31, 2007, alleging an unlawful termination in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act, and the First and Fourteenth Amendments of the United States Constitution and the laws of the State of Mississippi. Mr. James contends that Laurence Mellen, district attorney for District 11 of the Circuit Court of Mississippi, fired him from his position as an investigator with the Office of the District Attorney because he qualified to run for the position of sheriff of Bolivar County. The defendants have moved to dismiss this action based on sovereign immunity, Eleventh Amendment immunity, and qualified immunity. The plaintiff has filed a response to the motion to dismiss and/or for summary judgment and a cross-motion to strike the affidavit used to support the defendants' motion.

1

In his response in opposition to the motion to dismiss and/or for summary judgment, the plaintiff has conceded his Title VII claim as well as his §1983 claim against the state. He also acknowledges that Mellen is immune from suit and individual liability under the Mississippi Tort Claims Act, but maintains that Mellen is liable in his official capacity under the Mississippi Tort Claims Act. He also maintains his claim against Mellen in his individual capacity for violations of his First Amendment rights.

First Amendment

Government officials are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kipps v. Cailler*, 197 F. 3d 765, 768 (5th Cir. 1999). To determine whether an official is entitled to qualified immunity, we must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388 (5th Cir. 2000).

Mr. James has alleged a violation of his First Amendment free speech right to run for public office, stemming from his termination from the district attorney's office because he had qualified to run for sheriff of Bolivar County. When Mr. James informed Mr. Mellen that he qualified to run for sheriff, Mr. Mellen told the plaintiff that he did not think it would be possible for him to run for sheriff and maintain his job. Mr. Mellen then told Mr. James that he should resign. Mr. Mellen claims that Mr. James responded by stating that he had consulted with an attorney and been advised that he could run, while Mr. James contends he said he wanted to consult with an attorney before making a decision. Mr. Mellen then terminated the plaintiff.

2

Candidacy for office is one of the ultimate forms of political expression in our society, and is therefore a right protected by the First Amendment. *Edwards v. Reynaud*, 463 F. Supp. 1235, 1239 (D.C. La. 1979) (citing *Morial v. Judiciary Commission of the State of Louisiana*, 565 F.2d 295, 301 (5th Cir. 1977)). The court now considers whether Mr. Mellen's decision to terminate the plaintiff was objectively unreasonable in light of clearly established law.

Political patronage cases are those in which a public employee is discharged for political activity or party affiliation. *Brinston v. Dunn*, 928 F. Supp. 669, 670 (S.D. Miss. 1996). The Fifth Circuit has analyzed the Supreme Court's line of political patronage cases, noting that in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that noncivil service employees could not be dismissed because of political affiliation unless they occupied policymaking or confidential positions. *Id*. No clear line can be drawn between policymaking and nonpolicymaking positions. *Gonzalez v. Benavides*, 712 F.2d 142, 148 (5th Cir. 1983) (citing *Stegmaier v. Trammel*, 597 F.2d 1027, 1033 (5th Cir. 1979)). While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. *Id*. The nature of the responsibilities is critical. *Id*. An employee with responsibilities that are not well defined or are of a broad scope more likely functions in a policymaking position. *Id*. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. *Id*. An employee is a confidential employee if he or she stands in a confidential relationship to the policymaking process, such as an advisor to a policymaker, or if the employee has access to confidential documents or other materials that embody policymaking deliberations and

determinations. *Stegmaier v. Trammel*, 597 F.2d 1027, 1040 (5th Cir. 1979).

The ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that [party affiliation] is an appropriate requirement for effective performance of the public office involved. *Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002) (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574(1980)). In *Branti v. Finkel*, 445 U.S. at 518, the Supreme Court held that if "an employee's private political beliefs would interfere with the discharge of public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Brinston*, 928 F. Supp. at 670. Factors to weigh in the balancing include: (1) whether the employee's actions involve "public concerns"; (2) whether "close working relationships" are essential to fulfilling the employee's public responsibilities; (3) the time, place, and manner of the employee's activity; (4) whether the activity can be considered "hostile, abusive, or insubordinate"; and (5) whether the activity "impairs discipline by superiors or harmony among coworkers." *Id*. at 671.

The Fifth Circuit has recognized that a stronger showing of disruption may be necessary if the employee's speech more substantially involves a matter of public concern. *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). The Fifth Circuit has also noted that in cases involving public employees who occupy policymaker or confidential positions, the government's interests more easily outweigh the employee's interests. *Id*. However, this does not negate the repeated warning that the wide variety of situations in which this issue might arise requires consideration of each case on its particular facts. *Id*.

Mr. James does not contest that he occupied a confidential position in relation to the district attorney. However, he does maintain that his candidacy would not have interfered with the functions of the district attorney's office. While Mr. James' candidacy for public office may or may not have caused conflict or disharmony among employees within the district attorney's office, Mr. Mellen was fearful Mr. James' candidacy would create tension between the sheriff's department and the district attorney's office. Mr. James' affidavit acknowledged that he had a good working relationship with all of the criminal investigators and deputies involved in criminal investigation at the Bolivar County Sheriff's Department, but also states that he never worked directly on a case with the incumbent sheriff, his two chief deputies, or his command staff. Mr. James contends that based upon his past experience with the criminal investigators and deputies he worked closely with, none would have had a problem continuing to work with him while he was a candidate for office.

Mr. Mellen's affidavit states that the district attorney's office works more closely with sheriffs' offices than any other agency, and it relies on the sheriffs' offices to provide information by which the district attorney's office makes decisions on indictments and prosecutions. Mr. Mellen also maintains that Mr. James' run against an incumbent sheriff would take time away from his job, which would also adversely affect the district attorney's office.

It should be noted that all case law cited by the defendants involves employees either running against his or her employer or supporting a candidate running against the employer. The defendants maintain that *Gunaca v. State of Texas*, is an analogous case because it involves a district attorney choosing not to rehire an investigator due to political activity. 65 F.3d 467 (5th Cir. 1995). However, the failure to rehire stemmed from the investigator's political support of

the former district attorney as opposed to the district attorney who was subsequently elected. These facts are distinguishable because Mr. James in no way sought to challenge Mr. Mellen's position as district attorney through his candidacy or through the support of an opponent's candidacy, but instead sought a position completely outside of the district attorney's office. In previous cases involving novel factual scenarios, the Fifth Circuit has acknowledged that official actions are not necessarily protected by qualified immunity simply because the very action in question has not been previously held unlawful; however, the unlawfulness of the instant act must be apparent in light of preexisting law. *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1025 (5th Cir. 1988.) While this factual scenario presents a close question, the lack of direct or remotely analogous case law gives rise to the probability that reasonable officials could differ as to the legality of the plaintiff's termination. The district attorney's actions in these regards are not "apparently" unlawful, and in fact, were likely based on sound policy considerations. Accordingly, Mr. Mellen is entitled to qualified immunity on the First Amendment claim.

Mississippi Tort Claims Act

Mr. James contends that Mr. Mellen is liable in his official capacity under the Mississippi Tort Claims Act. There is a mandatory notice requirement on potential plaintiffs which must be satisfied prior to the institution of any tort lawsuit against a governmental entity or one of its employees. *Black v. City of Tupelo*, 853 So. 2d 1221, 1226 (Miss. 2003.) Notice of a claim must be given ninety (90) days prior to maintaining an action. *Id*. (citing Miss. Code Ann. § 11-46-11(1)). The Mississippi Supreme Court has adopted a "substantial compliance" standard to determine whether the notice of claim requirements have been met. *Id*. However, Mr. James has

not alleged nor offered any proof that he provided a notice of claim letter to any of the named defendants before the institution of this action. Therefore, his state law claims must be barred by the Mississippi Tort Claims Act.

Plaintiff's Cross Motion to Strike Affidavit

Mr. James filed a cross motion to strike Mr. Mellen's affidavit supporting his motion to dismiss. Mr. James asserts that the affidavit does not meet the requirements of Fed. Rule Civ. Pro. 56(e), which states that "a supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In particular, Mr. James objects to language in paragraphs 13 and 14 of Mr. Mellen's affidavit. Paragraph 13 of the affidavit states that the secretary told Mr. Mellen that Mr. James had tape recorded the conversation leading up to the termination. Paragraph 14 of the statement discusses Mr. Mellen feelings about the possibility of having this private conversation recorded and the necessity of being able to trust his employees. The language at issue solely involves trust and confidentiality, but since Mr. James never disputed being a confidential employee the court had no need consider this language while making its determination. Accordingly, the plaintiff's motion to strike is MOOT.

This the 3rd day of March, 2008.

/s/ MICHAEL P. MILLS
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI